NO. 07-04-0289-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

AUGUST 29, 2005

_____

IN THE INTEREST OF D.N., K.N. AND C.N., MINOR CHILDREN

_____

FROM THE 100th DISTRICT COURT OF COLLINGSWORTH COUNTY;

NO. 6796; HON. DAVID M. McCOY, PRESIDING

_____

Before QUINN, C.J., CAMPBELL, J., and BOYD, S.J.[1]

**OPINION**

In this appeal, appellants Ginger Karol Harmon Neeley and John Neeley challenge a trial court order terminating their parental rights to their minor children D. N., K. N., and C.N.  Finding no reversible order in the order, we affirm the judgment of the trial court.

In mounting their challenge, appellants raise four points of asserted trial court error. In those points, they raise the following issues for our decision:  the trial court 1) committed reversible error in finding there was clear and convincing evidence that termination was in the best interest of the children, 2) committed reversible error in finding there was clear and

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2004).

convincing evidence that appellants knowingly placed or knowingly allowed their children to remain in conditions or surroundings that endangered the children's physical or emotional well-being, 3) committed reversible error in finding there was clear and convincing evidence that appellants engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered their physical or emotional well-being, and 4) abused its discretion by ignoring the jury's verdict that termination of appellants' parental rights was not in the children's best interest.

## Background

Appellants are the biological parents of the minor children concerned in this proceeding. The Texas Department of Family and Protective Services (the DFPS) filed suit seeking termination of appellants' parental rights. An attorney ad litem was appointed to represent the minor children in the proceeding and in this appeal. On April 17, 2003, after a three-day trial, a jury returned its verdict denying termination of appellants' parental rights and refusing to appoint the DFPS as managing conservator of the minor children. On May 29, 2003, an associate judge of the trial court entered a judgment based upon the jury verdict. On June 2, 2003, appellants gave notice of appeal from the judgment and from certain findings contained in the judgment. On June 4, 2003, the attorney ad litem for the minor children also filed a notice of appeal from the judgment, specifically contending that the evidence before the jury established by clear and convincing evidence that appellants' rights should be terminated and that the jury finding that their parental rights should not be terminated was against the weight of the evidence. After conducting a hearing at which, in addition to considering the record of the evidence produced at the jury trial, the trial judge also heard testimony, he rendered the judgment giving rise to this appeal.

Discussion

Because appellants' first three points are so closely interrelated, we will discuss them together. As is evident from the nature of appellants' points, the Texas Family Code provides that a parent's rights may be terminated if they are guilty of the type of conduct described in their points. *See* Tex. Fam. Code Ann. §161.001(D) & (E) (Vernon 2002). Because the termination of parental rights involves fundamental constitutional rights, *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212-13, 31 L.Ed.2d 551 (1972), it is now axiomatic that the evidence supporting findings of such nature must be clear and convincing. *See In the Interest of G.M.*, 596 S.W.2d 846, 847 (Tex. 1980).

The clear and convincing standard is an intermediate standard falling between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *Id.* It requires a degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be proved. *Id*. It requires more proof than the preponderance of the evidence standard required in civil cases but less than the reasonable doubt standard in criminal cases. *Id.* On the appeal of a fact finding made by clear and convincing evidence, we review the record to determine if the trial court could reasonably find that the fact was highly probable, *i.e.,* whether the evidence was sufficient to produce in the mind of the factfinder a firm belief or conviction as to the truth of the fact found by the judge. *Amador v. Berrospe*, 961 S.W.2d 205, 208 (Tex. App.–Houston [1ˢᵗ Dist.] 1996, writ denied).

A party may appeal an associate judge's decision by filing a notice of appeal not later than the third day after the date the party receives notice of the substance of the associate judge's report. Tex. Fam. Code Ann. § 201.015 (Vernon 2002). If an appeal to

3

the referring court is filed by a party, any other party may file an appeal to the referring court not later than the seventh day after the date the initial appeal is filed. *Id.* In such an appeal, the reviewing judge may consider the record from the hearing before the associate judge, including the charge and jury verdict. In addition, the parties may present witnesses in a hearing *de novo* on the issues raised in the appeal.

In the proceeding reviewed by us, the trial judge elected to consider the record of the jury trial and, in addition, received the testimony of live witnesses. Because of the questions presented in this appeal, it is necessary to go into the pertinent testimony considered by the judge in some detail.

In the trial before the jury, the children had been removed from appellants' home and they were seeking their return. At trial, Ginger admitted, albeit with a denial that she was doing so at the time of her testimony, that she abused drugs to the extent that it affected her ability to function in daily life and that she had done so while her minor children were in her care. She also admitted that while she was abusing drugs, their emotional well-being was endangered because of the lack of attention she gave her children and "just the danger of drugs being in the home." Ginger further conceded that the children were aware that she and her husband were abusing alcohol. She stated that during a period when the children were temporarily removed by the court from her home, although ordered by the court to do so, she did not participate in an in-patient drug treatment program. Ginger and her husband had engaged in fights in the presence of the children, and she had taken refuge in a battered women's shelter because of physical abuse by her husband. Furthermore, she admitted she had left the children in John's care at a time when she knew he was abusing alcohol. However, she averred that at the time of her jury trial

4

testimony, she and her husband were getting along, she was free of drugs and, although she had figured out that her priorities had been "really messed up," she now knew her priorities.

John testified that he was an alcoholic. Although he averred that he was not doing so at the time of his testimony, he admitted that he had been under the influence of alcohol in the past while the children were in his care to the extent that it impaired his ability to take care of them and put them at risk. He also admitted there had been physical violence between him and his wife but, although the children had been present during verbal fights, they had never been present when there was physical violence between him and Ginger. He knew that during the period when Ginger abused prescription drugs, the children had been left with her. Additionally, he said that when he abused chemicals, he had put his needs above those of the children. He admitted that when the children witnessed their arguments, it made them feel insecure and "a little bit unstable." There was also testimony produced at trial from various Child Protective Service (CPS) employees about appellants' substance abuse periods and the failure to comply with CPS's directives to attend abuse control and to conduct remedial and educational meetings.

At the appeal hearing before the presiding trial judge, he heard the live testimony of three witnesses, Diana Bartlett, James H. Reeves, and Susan Cummings. Bartlett was a CPS Specialist and the Neeley family case had been transferred to her to ensure that they were able to complete any services requested in the order issued by the associate judge, primarily the portion related to the drug screens. She offered to do a cheek swab drug screen, but the Neeleys were not comfortable with that, told her they thought they were only supposed to participate in a urinalysis, and wanted to contact their attorney. The

maternal grandmother of the children advised them not to submit to tests until they talked to their attorney. She later learned that a drug screen had been completed on John at the Juvenile Probation Office in Gray County. The Neeleys never returned to her. She also averred that the children had been doing well in their relative placement with a maternal great-aunt and uncle.

James H. Reeves, a juvenile probation and TYC parole officer in Gray County, testified that as a part of his duties, he gave drug screens for jobs and "things like that" and identified the type of report form they used. He averred that John came in and requested a drug test, stating that he had a job interview coming up for which he would need a drug test certification. Reeves said John supplied a urine sample, which test result showed John had a "problem with meth and morphine." He also stated that it was unusual for a test result to show positive for morphine. John asked for a test result form, which showed positive results for morphine and methamphetamine, and it was completed and signed by both of them. They did not test for alcohol. John left with the form. Bartlett later contacted Reeves and asked him if the test results were all negative and he told her they were not. When asked on cross-examination why he remembered John's test, Reeves stated that John's was the only outside test given in a three-week period and that the test was positive for morphine.

The next witness called was Susan Cummings, who was "Ginny's friend and John's cousin." When asked if she had supplied morphine to either Ginger or John after the April 17, 2003 trial date, she was instructed about her right not to incriminate herself and after having been so instructed, she said she wanted to claim her right. She said that she saw the appellants on "almost a daily basis." When queried if in her interaction with the Neeleys

6

since the trial date she had made observations that it would not be in the best interest of the children to be placed with them, she answered "yes." She had also observed appellants use drugs in her presence. She could not say exactly how many times, but it was more than five.

After reviewing the evidence considered by the judge, we are satisfied it is sufficient to produce in the mind of the trial judge a firm belief or conviction sufficient to justify his findings supporting his termination of appellants' parental rights. Otherwise stated, the evidence before the judge was clear and convincing. Appellants' first three points are overruled.

In their fourth point, as we noted above, appellants contend that the trial court abused its discretion by "ignoring" the jury's verdict that termination of their parental rights was not in the children's best interest. As we understand it, the gist of appellants' argument under this point is that in the guardian ad litem's notice of appeal, he did not specifically include a challenge to the jury's finding that termination of appellants' parental rights was not in the children's best interest.

Supporting this proposition, he points to the established rule that a notice of appeal restarts the process only "to the extent of the challenged findings" and reasons that being so, the trial judge erred in conducting a full blown hearing as to the underlying questions whether appellants had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the physical or emotional well-being of the children or engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered their physical or emotional well-being.

In the ad litem's notice of appeal, he specifically argued that the evidence before the jury established by clear and convincing evidence that appellants' parental rights should be terminated and that the jury verdict was against the weight of that evidence. That contention was sufficient to trigger the trial judge's right to review that evidence and, as his review of that evidence was *de novo* under the statute, to hear additional evidence in order to determine whether the best interest of the children required termination of the parental rights. Moreover, in appellants' notice of appeal, they specifically challenged all the factual findings entered by the associate judge in his order. Under this record, the trial judge acted within his authority to conduct the appeal hearing in the manner he did. Appellants' fourth point in overruled.

In sum, all of appellants' points are overruled and the judgment of the trial court is affirmed.


John T. Boyd
Senior Justice